## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

NORTHGATE TECHNOLOGIES INC.,    )    Case No. 1:24-cv-01885

      Petitioner,    )    Judge J. Philip Calabrese

v.    )    Magistrate Judge Jonathan D. Greenberg

UNITED STATES ENDOSCOPY GROUP, INC.,    )

      Respondent.    )

## OPINION AND ORDER

Petitioner Northgate Technologies Inc. alleged that Respondent United States Endoscopy Group, Inc. breached a requirements contract by purchasing covered goods from an alternate source. Pursuant to an agreement between the parties, Petitioner's claim was resolved through arbitration. The arbitrator granted Petitioner's claim but awarded no damages. Petitioner asks the Court to vacate that award. Respondent opposes and asks the Court to confirm the arbitration award. For the reasons that follow, the Court **DENIES** Petitioner's motion to vacate (ECF No. 1) and **GRANTS** Defendant's motion to confirm the award (ECF No. 7).

## FACTUAL AND PROCEDURAL BACKGROUND

Northgate Technologies manufactures medical devices known as insufflators, which inject pressurized gas into a body cavity to create space for medical procedures. (ECF No. 1-1, PageID #5.) In addition, it manufactures the tubes and filters that carry and purify the gas. (*Id.*) For over a decade, Northgate Technologies sold

insufflators, tubing sets, and filters to United States Endoscopy through a series of requirements contracts. (*Id.*)

In October 2020, the parties signed an agreement that required United States Endoscopy to purchase from Northgate Technologies all of its and its affiliates' worldwide requirements of insufflators, tubing sets, and filters for five years. (*Id.*) For several years, United States Endoscopy complied with its obligations under the contract. (*Id.*)

In January 2021, United States Endoscopy's parent company—STERIS—acquired a company whose subsidiary—Medivators—directly competed against both United States Endoscopy and Northgate Technologies. (ECF No. 1-2, PageID #13.) Following the acquisition, STERIS began purchasing insufflators and related goods from Medivators. (*Id.*) Petitioner brought a claim alleging that Respondent's purchase of insufflators and related goods from Medivators resulted in $3,992,595.91 in damages from lost sales. (ECF No. 1-1, PageID #5.)

## A. Arbitration

In February 2024, Petitioner filed a demand for arbitration against Respondent. (ECF No. 1-1, PageID #6.) Petitioner claimed that Respondent breached the parties' agreement because Respondent—through its affiliate STERIS—purchased insufflators, tubing sets, and filters from another source. (*Id.*; ECF No. 7, PageID #45.) In commercial arbitration administered by the American Arbitration Association, the arbitrator found that the conduct of STERIS, as an affiliate of Respondent, constituted a breach of the parties' agreement. (ECF No. 1-2, ¶ 5, PageID #14.) Between May 1, 2022 and May 31, 2024, STERIS

2

purchased 1,628 insufflators from Medivators, 193 of which it purchased during the first five months of 2024.  (*Id.*, ¶ 1, PageID #16.)  Projecting these purchases through the term of the requirements contract, Petitioner maintained that it would have sold an additional 570 insufflators had Respondent complied with the contract.  (*Id.*)  Based on this calculation, Petitioner sought lost profits on 2,207 insufflators.  (*Id.*)

Though he found breach, the arbitrator did not award Petitioner any damages for lost profits on the insufflators, finding that the number of insufflators Respondent or its affiliates purchased from Petitioner remained consistent throughout the term of their agreement.  (*Id.*, ¶ 4, PageID #16–17.)  The arbitrator saw no evidence that, at the time they entered into the agreement, the parties contemplated the possibility of Respondent's parent company acquiring a competitor and beginning to market the competitor's insufflators along with those of Petitioner.  (*Id.*, ¶ 5, PageID #17.)  Accordingly, the arbitrator determined that awarding damages for lost profits would result in an improper windfall.  (*Id.*, ¶¶ 6–7, PageID #17.)

As to the tubing sets and filters, Petitioner urged the arbitrator to calculate lost profits in proportion to lost profits for insufflators rather than looking to decreases in sales of tubing sets and filters.  (*Id.*, ¶ 1, PageID #17.)  The arbitrator rejected this proposal because nothing in the record showed that Petitioner's insufflators could have substituted for Medivators's insufflators on a one-for-one basis in every sale.  (*Id.*)  Because Petitioner did not present evidence regarding the sales history of tubing sets and filters over the entire term of the agreement, the

arbitrator found that it "would be impossible . . . to compute damages for lost profits on the decreased purchases with any level of accuracy." (*Id.*, ¶ 5, PageID #18.)

## B.  Litigation

On October 29, 2024, Petitioner filed a petition in federal court to vacate the arbitration award.  (ECF No. 1, PageID #1.)  Petitioner argues that the arbitrator exceeded his powers and displayed manifest disregard of the applicable law.  (*Id.*, PageID #3.)  Specifically, Petitioner alleges that the arbitrator "erroneously awarded no damages." (*Id.*, PageID #4.)  Respondent argues that the Arbitrator correctly determined that Petitioner was not entitled to any damages because Petitioner did not carry its evidentiary burden to prove damages.  (ECF No. 7, PageID #43 & #53.) Citing the Illinois Uniform Arbitration Act, Respondent moves for confirmation of the arbitrator's award.  (ECF No. 7, PageID #49.)

## ANALYSIS

Whether the arbitration provision in the parties' agreement contemplates application of the Federal Arbitration Act, as Petitioner suggests, or the Illinois Uniform Arbitration Act, as does Respondent, makes no difference.  (ECF No. 1-1, PageID #10; ECF No. 7, PageID #48–49; ECF No. 8, PageID #65.)  On the record presented, State law and the Federal Arbitration Act lead to the same conclusion.

## I.  Federal Arbitration Act

The Federal Arbitration Act provides that a court "must grant [a motion to confirm an award] unless the award is vacated, modified, or corrected as prescribed" elsewhere in the Act.  9 U.S.C. § 9.  Under the Act, a court may vacate an arbitral award in certain limited circumstances involving fraud, misconduct, or evident

4

partiality.  9 U.S.C. § 10(a).  Additionally, the Act empowers a federal court to vacate an award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  *Id.* § 10(a)(4).  A court may modify or correct an award in certain narrow circumstances, such as where the arbitrator (a) made a mistake in calculation or describing a person or property or (b) awarded on a matter not submitted to him.  *Id.* § 11.  Because of the exceedingly high standards in Section 10 and the limited grounds in Section 11, review of an arbitrator's decision is "one of the narrowest standards of judicial review in all of American jurisprudence."  *Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 305 (6th Cir. 2008) (quotation omitted).  A court does not reconsider the merits of the award or the arbitrator's findings of fact.  *Wachovia Secs., Inc. v. Gangale*, 125 F. App'x 671, 677 (6th Cir. 2005) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987)).  The Court may only assess whether the award must be vacated, modified, or corrected.  *Id.*

### I.A.    Manifest Disregard of the Law

Notwithstanding this clear statutory language, under the law of this Circuit, a court may vacate an award made "in manifest disregard of the law."  *Merrill Lynch, Pierce, Fenner & Smith v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995) (citing *Wilko v. Swan*, 346, U.S. 427, 436–37 (1953), *overruled on other grounds by Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477 (1989)).  An arbitrator "acts with manifest disregard if '(1) the applicable legal principle is clearly defined and not subject to reasonable debate, and (2) the arbitrators refused to heed that legal

5

principle.'" *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000) (quoting *Jaros*, 70 F.3d at 421).

To show manifest disregard, "a party must show more than a mere error in interpretation or application of the law." *Id.* at 671 (cleaned up).  In *Dawahare*, the court determined that there was no manifest disregard of law where there was "no evidence that the arbitrators were aware of some relevant law on damages that they chose to ignore" and the damages evidence presented did not necessarily require any particular outcome.  *Id.*  Accordingly, as long as the court "can find any line of argument that is legally plausible and supports the award," it must confirm the award.  *Physicians Ins. Cap. v. Praesidium All. Grp.*, 562 F. App'x 421, 423 (6th Cir. 2014) (quoting *Jaros*, 70 F.3d at 421).  Only where "no judge or group of judges could conceivably come to the same determination" as the arbitrator may a court set aside an award.  *Id.* (quoting *Jaros*, 70 F.3d at 421).

In this case, the parties agree that Section 2-708(2) of the Uniform Commercial Code provides the applicable measure of damages.  (ECF No. 1-1, PageID #7–8; ECF No. 7, PageID #51.)  In relevant part, the formula for calculating damages for breach of a requirements contract is:

> the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this Article (Section 2-710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.

U.C.C. §2-708(2); 810 Ill. Comp. Stat. 5/2-708(2).  Under Illinois law, "[r]ecovery of lost profits [is] allowable if the loss is proved with a reasonable degree of certainty and such profits were within the reasonable contemplation of the parties at the time

the contract was entered." *Hentze v. Unverfehrt*, 604 N.E.2d 536, 540 (Ill. Ct. App. 1992) (citing *Midland Hotel Corp. v. Rueben H. Donnelley Corp.*, 515 N.E.2d 61, 66 (Ill. 1987)).  Accordingly, "the applicable legal principle is clearly defined and not subject to reasonable debate." *Jaros*, 70 F.3d at 421.

### I.B.    The Arbitrator's Award

Here, the arbitrator considered persuasive case law and analyzed whether the breach was reasonably foreseeable at the time of contracting.  (ECF No. 1-2, ¶ 5, PageID #17 (discussing *Honeywell Int'l Inc. v. Air Prods. & Chems. Inc.*, 858 A.2d 392, 421 (Del. Ch. 2004).)  Based on the absence of evidence in the record suggesting otherwise, the arbitrator found that "Respondent's parent company purchasing a competitor and beginning to market the competitor's insufflators along with Claimant's insufflators" was not reasonably foreseeable at the time of contracting. (*Id.*)  Following STERIS's acquisition of Medivators, Respondent purchased similar amounts of insufflators from Petitioner, leading the arbitrator to find that Petitioner provided no evidence that it suffered any decrease in sales of the product.  (*Id.*, ¶ 4, PageID #16–17.)  Accordingly, the arbitrator reasoned that any award of damages for the breach he found would put Petitioner in a better position than performance under the contract.  (*Id.*, ¶ 6, PageID #17.)

As to tubing sets and filters, the arbitrator found that decreased purchases were "the direct result of STERIS acquiring Medivators' products in breach of the Agreement.  (*Id.*, ¶ 4, PageID #18.)  Still, the arbitrator declined to award damages. Because Petitioner failed to present evidence regarding its sales history over the course of the agreement, "it would be impossible . . . to compute damages for lost

profits on the decreased purchases with any level of accuracy." (*Id.*, ¶ 5, PageID #18.) For this reason, the arbitrator also rejected Petitioner's proposal to use a one-to-one ratio of tubing and filters sold to Respondent as the measure of damages. (*Id.*, ¶ 1, PageID #17.) In this regard, Illinois law, which governs the parties' contract, places the burden on the claimant to provide an evidentiary basis for calculating lost profit damages so that the arbitrator need not speculate. *See, e.g.*, *Hentze*, 604 N.E.2d at 540.

For these reasons, the record shows that the arbitrator considered the applicable law and came to a "legally plausible" conclusion. *Physicians Ins. Cap.*, 562 F. App'x at 423. Because the Court's review is limited and does not include reconsideration of the merits of the award or the arbitrator's findings of fact, the Court cannot say that the arbitrator's award manifestly disregarded the law. *Gangale*, 125 F. App'x at 677–78.

### I.C.  Petitioner's Arguments

Petitioner's arguments to the contrary are unavailing. Petitioner relies on cases that stand for the proposition that a buyer in a requirements contract must purchase its required product from the seller or else commit breach of contract. *Agfa-Gevaer, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1524 (7th Cir. 1989); *see also* ECF No. 1-1, PageID #7.) But the arbitrator found, in calculating damages, that the parties did not contemplate the events that unfolded. (ECF No. 1-2, ¶ 5, PageID #17.) Petitioner fails to explain how this finding evinces manifest disregard of the law, under which "[r]ecovery of lost profits are allowable if the loss is proved with a reasonable degree of certainty and *such profits were within the reasonable*

8

*contemplation of the parties* at the time the contract was entered." *Hentze,* 604 N.E.2d at 540 (emphasis added).  In reply, Petitioner makes a conclusory statement that the acquisition of Medivators by Respondent's parent company was contemplated when the agreement was signed but offers no evidence in support.  (ECF No. 8, PageID #70.)  Here—as appears to have been the case in arbitration—Petitioner conflates proof of breach with proof of damages.

Also, Petitioner argues that the arbitrator misapplied the law by considering its historic sales as a way to calculate damages, which it argues is "not part of the damages calculation under controlling law." (ECF No. 8, PageID #69 n.4.)  However, proof of lost profits generally involves evidence of past profits in an established business.  *Ivey v. Transunion Rental Screening Sols., Inc.*, 215 N.E.3d 871, 878 (Ill. 2022).  Further, "[e]xperts may not guess the amount of potential lost profits where there is no historical data to demonstrate their likelihood." *Id.*  Considering the evidence presented, the arbitrator found that Respondent continued to purchase the same number of insufflators from Petitioner over the course of the parties' agreement, including after STERIS acquired Medivators.  (ECF No. 1-2, ¶ 4, PageID #16–17.)  Petitioner provided no evidence of sales history for tubing sets and filters, leaving the arbitrator without any way other than speculation to calculate lost profits with any accuracy.  (*Id.*, ¶ 5, PageID #18.)

Again, the law precludes the Court from reviewing the merits of the arbitrator's decision.  Petitioner fails to show that the arbitrator manifestly

disregarded the law.  Instead, Petitioner's arguments amount to a general dissatisfaction with the arbitrator's decision.

## II.  Illinois Uniform Arbitration Act

Like the Federal Arbitration Act, Section 12 of the Illinois Uniform Arbitration Act provides limited grounds for vacatur of an arbitrator's award, primarily based on bad faith.  710 Ill. Comp. Stat. 5/12.  Like the federal courts, the Illinois courts recognize that manifest disregard of the law also supports vacatur.  *See e.g.*, *Tim Huey Corp. v. Global Boiler & Mech., Inc.*, 649 N.E.2d 1358, 1363 (Ill. Ct. App. 1995).  "To vacate an arbitration award for manifest disregard of the law, there must be something beyond and different from mere error in law or failure on the part of the arbitrators to understand or apply the law; it must be demonstrated that the [arbitrators] deliberately disregarded what they knew to be the law in order to reach the result."  *Id.* (cleaned up).  For the same reasons already explained, and because Petitioner offers no evidence showing that the arbitrator disregarded the law, Illinois law provides no basis for vacating the arbitrator's award either.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner's motion to vacate the arbitrator's award (ECF No. 1) and **GRANTS** Respondent's motion to confirm the award (ECF No. 7).

**SO ORDERED.**

Dated:  April 29, 2025

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio

11